# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | Case No.: 2:10po00002 |
| v. ) | |
| ) | **MEMORANDUM ORDER** |
| **JAMES R. ORR III,** ) | |
| Defendant ) | By: PAMELA MEADE SARGENT |
| ) | United States Magistrate Judge |

This case is before the court on the defendant's oral motion made at his August 9, 2010, trial for judgment as a matter of law on a charge of violating 36 C.F.R. § 4.2, incorporating Virginia Code Annotated §46.2-817. ("Defendant's Motion"). The court took Defendant's Motion under advisement. Based on the reasons stated below, I hold that the Government's evidence is legally sufficient to sustain a conviction, however, I am persuaded that the Government has failed to prove the defendant's guilt beyond a reasonable doubt. Defendant's Motion, therefore, is **DENIED**, but a finding of **NOT GUILTY** shall be entered on this charge.

The defendant, James R. Orr III, ("Orr"), was charged on May 22, 2010, with committing several petty offenses within the confines of the Cumberland Gap National Historical Park in the Western District of Virginia. Included among these charges was a charge that he violated 36 C.F.R. § 4.2, which incorporates Virginia Code Annotated §46.2-817. This charge was tried to the court on August 9, 2010. The evidence relevant to this particular charge is recited below in the light most favorable to the Government. The evidence at trial showed that Orr was standing beside an all-

terrain vehicle, ("ATV"), on a trail closed to such vehicles when he was discovered by Park Ranger Mike Ausmus. Ausmus was off-duty, not in uniform and walking a dog at the time that he encountered Orr on the walking trail that goes through the Cumberland Gap. Ausmus did not identify himself as a Park Ranger, and he did not give Orr any instruction to remove the prohibited vehicle from the trail. Instead, after Orr left riding the ATV traveling toward the Virginia side of the Gap, Ausmus used his cellular telephone to call on-duty Park Ranger Shane Sturgill and inform him that a man was riding an ATV toward the Virginia side of the trail.

After calling Sturgill, Ausmus stated that he followed Orr down the trail to determine which direction he would travel at a fork in the trail. Ausmus stated that while he lost sight of Orr, he continued to hear the ATV as it traveled down the trail. Based on the tracks left by the ATV, Ausmus determined that Orr had traveled down the trail leading to the Iron Furnace parking lot. Ausmus again called Sturgill and told him the direction in which Orr was traveling. Ausmus stated that he continued to follow Orr down the trail toward the Iron Furnace parking lot.

Sturgill arrived at the Iron Furnace parking lot and placed his marked Dodge Durango patrol vehicle at the end of the trailhead in an attempt to intercept Orr. Sturgill stated that he saw Orr traveling down the trail on the ATV. Sturgill, who was in uniform, exited his patrol vehicle and walked toward Orr. Sturgill stated that Orr's view of both him and his patrol vehicle was unobstructed. Sturgill also stated that he had not activated the emergency lights on his patrol vehicle. Sturgill stated that when he was within 70 to 75 feet from Orr, he yelled at Orr, identified himself as a Park Ranger and ordered Orr to stop his ATV. Sturgill stated that Orr stopped the vehicle,

put the vehicle in reverse, turned the vehicle, changed gears and headed back up the trail.

Ausmus stated that he again encountered Orr traveling on the trail in his direction at a high rate of speed. Ausmus stated that he then identified himself as a Park Ranger and ordered Orr to stop. Orr did not stop, and one to two seconds later, Ausmus stated that he grabbed Orr and pulled him from the ATV. A struggle then ensued as Ausmus tried to retrieve the key from the ATV to prevent Orr from leaving. Ausmus stated that Orr managed to get back on the ATV and was attempting to leave the scene when he again grabbed Orr and pulled him from the ATV. Ausmus stated that Orr reached into his right-hand pants pocket and produced what appeared to be a handgun. Ausmus then pulled his service revolver from his pocket and pointed it at Orr. Ausmus stated that Orr returned the gun to his pocket. Ausmus stated that he again identified himself as a Park Ranger and ordered Orr to get down on the ground. Ausmus stated that Orr ignored his multiple orders to get down on the ground and remained standing. Ausmus then used his phone to again contact Sturgill and request that he come to his location.

Sturgill stated that Ausmus called him and told him that Orr had brandished a firearm and that he had Orr off of the ATV with his service revolver pointed at him. Sturgill stated that he left the phone connection open as he headed toward Ausmus's location. Sturgill stated that he heard Ausmus tell Orr to get down on the ground. Sturgill stated that he took a shortcut through the woods and arrived at Ausmus's location to find Orr still standing. He stated that he pulled his service revolver and pointed it at Orr. Sturgill stated that he ordered Orr to get on the ground at least three

times before Orr sat down on one of the footpegs on the ATV. Sturgill said that he and Ausmus continued to order Orr to get down on the ground. When he did not get down on the ground, they forced him to the ground. Both Sturgill and Ausmus stated that Orr did not follow orders to put his hands behind his back and that they forced his hands behind his back and placed them in handcuffs.

After Orr was in handcuffs, Park Ranger Greg Johnston arrived on the scene. Johnston stated that while he was walking Orr down the trail toward the Iron Furnace parking lot, he advised Orr of his Miranda warnings. Orr told Johnston that he wanted a lawyer. Nonetheless, Johnston said that Orr continued to make several spontaneous statements as he walked him down the trail. In particular, Orr stated that he was headed back up the trail in an effort to locate his wife because he knew he was going to get a ticket.

When Orr complained of neck and back pain, an ambulance was called, and he was transported to a local hospital. Park Ranger Ben Burns arrived at the hospital after Orr arrived. Burns overhead Orr's wife ask him why he did not stop for the Rangers. Burns heard Orr tell his wife that he could not hear over the noise of the ATV engine. Burns also heard Orr say that he saw the patrol vehicle, and he saw the uniformed officer.

Ranger Johnston testified that some time after the incident, he received information that the ATV which Orr was riding on May 22 was reported stolen from Claiborne County, Tennessee, two years earlier.

Orr argues that this evidence is not legally sufficient to convict him of violating Virginia Code §46.2-817. Virginia Code Annotated §46.2-817 states in pertinent part:

> Any person who, having received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop, drives such motor vehicle in a willful and wanton disregard of such signal or who attempts to escape or elude such law-enforcement officer, ... is guilty of a Class 2 misdemeanor.

VA. CODE ANN. § 46.2-817(A) (2005 Repl. Vol & Int. Supp. 2010). While the court can find no reported cases on point, it appears that the clear language of the statute requires a showing that the person "received" a visible or audible signal to stop his motor vehicle. In this case, there is evidence that Orr saw Officer Sturgill and Sturgill's marked patrol vehicle before he turned around and attempted to elude him. Officer Sturgill, however, did not give any "visible" signal to Orr to stop. There is no evidence that Sturgill made any gestures to Orr, and he had not activated the emergency lights on his patrol vehicle. Sturgill did give Orr an audible signal to stop in that he yelled at Orr to stop.

The Government argues that this evidence is legally sufficient from which to draw the inference that Orr saw and heard Sturgill and disregarded the order to stop. While I find that this evidence would be legally sufficient if the finder of fact were persuaded, I, as the finder of fact, am not persuaded that this evidence shows beyond a reasonable doubt that Orr "received" an "audible" signal to stop. Sturgill stated that he got no closer than 70 feet from Orr, who was riding an ATV, when he ordered him to stop. While it may be possible that Orr heard Sturgill's order, it is just as likely that Orr could not hear the order over the sound of the ATV's engine. It is just as likely

that Orr simply saw Sturgill and turned around to evade him, which would not be a violation of this statute. *See Bass v. Commonwealth*, 525 S.E.2d 921, 924 (Va. 2000) (turning around to avoid traffic checkpoint more than 500 feet and one street intersection away does not violate §46.2-817).

For these reasons, I deny the Defendant's Motion, but I find Orr not guilty of this charge.

ENTERED: August 12, 2010.

s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE